# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| BERNADETTE JANKOVICH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:09-CV-19-TS |
| ) | |
| COUPLED PRODUCTS, LLC, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion for Summary Judgment [DE 19], filed on October 23, 2009, and the Defendant's Motion to Strike a Portion of the Affidavit of Bernadette Jankovich [DE 29], filed on January 4, 2010.

## BACKGROUND

On December 16, 2008, Bernadette Jankovich, the Plaintiff, filed her Complaint [DE 1] in the Allen Superior Court, Indiana. The Complaint alleges that her lawsuit is brought pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, and that the Defendant, Coupled Products, LLC, her former employer, discriminated against her by failing to accommodate her disability or perceived disability.[1] The Complaint states that the Plaintiff filed a Complaint of Discrimination [DE 1 at 4–5] with the Indiana Civil Rights Commission on

---

[1] In its Brief in Support of its Motion for Summary Judgment, the Defendant notes that the Complaint references Title VII, 42 U.S.C. § 2000e-5, in addition to the ADA, but that the allegations in the Complaint support only an ADA claim. In her Response in Opposition, the Plaintiff does not take issue with this observation by the Defendant. The Court finds the Defendant's argument to be well-taken. Because the Complaint alleges no facts regarding a Title VII claim and identifies no Title VII protected classification, it states no Title VII claim, and the mention of Title VII appears to be an inadvertent reference to the statute. Consequently, the Court understands the Plaintiff's Complaint to state only an ADA failure to accommodate claim.

January 11, 2008, and that she received a Notice of Right to Sue [DE 1 at 6] on September 20, 2008. On January 29, 2009, the Defendant removed the case to this Court, premising this Court's subject-matter jurisdiction on 28 U.S.C. § 1331. On February 3, the Defendant filed an Answer [DE 8].

On October 23, the Defendant filed a Motion for Summary Judgment [DE 19] and a Brief in Support [DE 20], to which it attached evidentiary materials. On December 11, the Plaintiff filed a Response in Opposition [DE 24] and a Designation of Evidence [DE 25]. On January 4, the Defendant filed a Reply Brief in Support [DE 28], to which it attached additional evidentiary materials, and a Motion to Strike a Portion of the Affidavit of Bernadette Jankovich [DE 29]. On April 23, the Plaintiff filed a Response in Opposition [DE 33] to the Defendant's Motion to Strike. On April 29, the Court granted the Plaintiff leave to file a Corrected Response in Opposition [DE 35] to the Defendant's Motion for Summary Judgment, as well as additional evidentiary materials.

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure provide that motions for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 608–09 (7th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Under Rule 56(e)(2), a party

opposing a properly made and supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." A court's role on summary judgment is not to weigh the evidence, make credibility determinations, or decide which inferences to draw from the facts, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 255; *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Thus, a court in ruling on a summary judgment motion construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *AA Sales & Assocs.*, 550 F.3d at 609. However, the court is not required to draw every conceivable inference from the record—only reasonable ones. *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989). Pursuant to a local rule governing summary judgment motions filed in this judicial district, the Court is to assume that the facts claimed by the moving party and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).

## STATEMENT OF FACTS

Viewing the facts in a light most favorable to the non-movant, the Plaintiff, and drawing all reasonable inferences in her favor, the Court finds the following facts. The Plaintiff was employed as a metalwares operator at the Defendant's Columbia City, Indiana, facility until

April 21, 2008.[2] She had worked in that facility since June 10, 1996. The terms and conditions of her employment were covered by a collective bargaining agreement (CBA) between the Defendant, as a successor to Dana Corporation, and the United Auto Workers union.[3] The Plaintiff was a member of the union.

On December 6, 2001, the Plaintiff sustained a serious workplace injury when a hydraulic press crushed her right hand. As a result, two fingers of her right hand were amputated. She underwent a surgical procedure to repair her right hand and rehabilitative therapy. On January 4, 2002, her physician, Dr. Jeffrey L. Harris, released her to return to work with restrictions. On April 26, 2002, Dr. Harris permitted the Plaintiff to return to work with regular duties, but with a restriction that she be accommodated as to the type of machinery she would operate. The Indiana Workers Compensation Board compensated the Plaintiff for the injury to her right hand based on the permanent partial impairment of her right upper extremity. She was found to have a total right hand impairment of 32% and a total upper extremity impairment of 29% with a total whole person impairment of 17%. On May 10, 2005, the Plaintiff presented the Defendant a permanent restriction related to her arthritis. She could not work for more than eight hours per day, could not operate a foot pedal, and could not stand. Her "no standing" restriction was eventually replaced with a restriction to alternate between sitting and standing. From the

---

[2] Along with its Reply Brief, the Defendant submitted what appears to be a job description for the metalwares operator position. However, no affidavit accompanied the purported job description. This submission fails to comply with Federal Rule of Civil Procedure 56(e) and is not properly before the Court for consideration.

[3] In its Brief in Support and Reply Brief in Support, the Defendant references terms of the CBA. The Affidavit of Kathryn Elaine Smith and the Affidavit of Judy Harlan also reference the CBA as Exhibit A. However, the Defendant did not submit the CBA with its materials. *See* Fed. R. Civ. P. 56(e)(1) ("If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit."). Thus, in considering the CBA, the Court is limited to the materials actually before it.

time of her injury until around November 21, 2007,[4] she performed primarily the manual staker operation within the metalwares job classification. During this time period, the Defendant accommodated her restrictions.

In November 2007, the Plaintiff's new supervisor, Judy Harlan, assigned the Plaintiff to operate a bender machine. The Plaintiff complied, although she believed it violated her restrictions. After two hours, she had developed swelling in her right arm and right hand as well as neck pain. The Plaintiff reported this to Ms. Harlan who told the Plaintiff that she had checked the Plaintiff's restrictions and that they did not prevent her from operating the bender. After Ms. Harlan indicated that the Plaintiff could return to work on the bender, the Plaintiff took the remainder of the day off so that she could see her doctor, Dr. James C. Hanus, because of injuries related to operating the bender machine. On November 26, 2007, the Plaintiff returned to work. She provided the Defendant a letter dated November 21, 2007, from Dr. Hanus, which discusses the Plaintiff's severe arthritis and expresses his belief that the Plaintiff would benefit "greatly" from returning to the manual staker machine, instead of the bender machine. (Nov. 21, 2007, Letter, DE 25-3.) The Plaintiff met with Human Resources Director, Robert Gaff, Ms. Harlan, and her union representative, Kathryn Smith, to discuss her assignment. The Plaintiff requested accommodation based upon her medical restrictions. The Defendant had automated some of the manual staker positions, and consequently the number of available manual staker positions was shrinking. According to evidence submitted by the Plaintiff, the Defendant did not base on seniority its assignments to operate machines. The Defendant told the Plaintiff that her requested accommodation was not possible, and it placed her on involuntary medical leave under

---

[4] The Plaintiff's Affidavit references the dates of November 21, 2006, and November 21, 2007. It appears that the reference to November 21, 2006, is a typographical error.

the CBA. Mr. Gaff told the Plaintiff that he would set up an appointment with a physician for her to be evaluated, but the Defendant never set up any appointment for an evaluation or a date for the Plaintiff to return to work. The Defendant's action was never grieved by the union. Apparently, the Defendant called Dr. Hanus to invite him to visit the facility to observe the metalwares operations, but Dr. Hanus indicated that he was unable to come to the plant to conduct such a review.

The Plaintiff never returned to work for the Defendant. On May 12, 2008, she received a letter from the Defendant indicating that she was laid off due to a company-wide lay off effective April 21, 2008.

## DISCUSSION

### A. The Defendant's Motion to Strike [DE 29]

The Defendant asks the Court to strike a portion of Paragraph 12 of the Affidavit of Bernadette Jankovich because, in the Defendant's view, it is inconsistent with her deposition testimony. Citing *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996), the Defendant argues that the Plaintiff cannot create an issue of fact by submitting an affidavit that contradicts prior deposition testimony.

In Paragraph 12 of her Affidavit, the Plaintiff states that she told the Defendant in the November 26, 2007, meeting with Mr. Gaff, Ms. Harlan, and Ms. Smith that she could run a serrator machine, in addition to the manual staker machine, which she preferred to run because of her experience and restrictions. In her deposition, the Plaintiff testified that Mr. Gaff asked her to make a list and explain what machines she could and could not run and that she did not know

precisely when she made that list and gave it to him. A little later in her deposition she was asked the following compound question: "Did you ever indicate that, well, if you couldn't run one of the old stakers, there really was no other job you could do? Did you explain that to Mr. Gaff in that meeting?" (Pl.'s Dep. 55, DE 20-2.) The Plaintiff answered that "in the list that I gave him [] I also said I could run a serrator." (Pl.'s Dep. 55, DE 20-2.) Defense counsel then asked, "Do you recall when you provided that list?" (Pl.'s Dep. 55, DE 20-2.) The Plaintiff responded, "Sometime within a week or two after. I'm, like I said, I don't remember the dates, time period." (Pl.'s Dep. 55, DE 20-2.) Defense counsel did not follow up with a question regarding whether the Plaintiff indicated in the November 26 meeting what machines she could run.

In addition to stating that a party cannot create a fact issue by submitting an affidavit that contradicts prior deposition or other sworn testimony, the Seventh Circuit in *Buckner* also stated that "supplemental affidavits can be employed to clarify ambiguous or confusing deposition testimony." *Id.*, 75 F.3d at 292. Considering the Plaintiff's testimony and defense counsel's questions at the Plaintiff's deposition, the Court finds that Paragraph 12 of the Plaintiff's Affidavit does not contradict her deposition testimony, but rather clarifies ambiguous or confusing deposition testimony. It also appears that the Plaintiff's statement in her Affidavit is made on personal knowledge of facts about which she is competent to testify. Accordingly, the Court will deny the Defendant's Motion to Strike.

### B.     The Defendant's Motion for Summary Judgment [DE 19]

The Plaintiff alleges that the Defendant discriminated against her in violation of the ADA by failing to accommodate her disability when it placed her on involuntary medical leave. The

ADA makes it unlawful for an employer to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a failure to accommodate claim under the ADA, a plaintiff must show (1) she is a qualified individual with a disability, (2) that the defendant was aware of her disability, and (3) that the defendant failed to reasonably accommodate her disability. *Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th, and 22nd Judicial Circuits*, — F.3d —, —, 2010 WL 1330237, at *3 (7th Cir. Apr. 7, 2010).

1.      *Whether the Plaintiff Was a Qualified Individual with a Disability*

The Defendant contends that the Plaintiff is not a qualified individual with a disability. To establish that she is a qualified individual with a disability, the Plaintiff must show "that she has a disability within the meaning of the ADA" and "that she is qualified for the job, i.e., that she is able 'to perform the essential functions of the job, with or without reasonable accommodation.'" *Gratzl*, 2010 WL 1330237, at *4 (quoting 42 U.S.C. § 12111(8) and citing *Jackson v. City of Chi.*, 414 F.3d 806, 811 (7th Cir. 2005)). To show that she has a disability within the meaning of the ADA, the Plaintiff must demonstrate that she has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(1); *Bodenstab v. County of Cook,* 569 F.3d 651, 656 (7th Cir. 2009).

The Plaintiff contends that her disability is due to her being an amputee and having arthritis, that her arthritis is not a disabling condition but that it exacerbates her impairment, and

that her physical impairment substantially limits the major life activities of writing, dressing, bathing, cooking, and working. A relevant regulation states that a physical impairment is any "physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more" body systems, including neurological and musculoskeletal. 29 C.F.R. § 1630.2(h). It also provides that the term major life activities means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).[5] A person is substantially limited in a major life activity when she is "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). To determine whether a person is substantially limited in a major life activity, various factors are considered, including the nature and severity and the duration or expected duration of the impairment as well as the permanent or long term impact or the expected permanent or long term impact. 29 C.F.R. § 1630.2(j)(2). In the context of the major life activity of working, substantially limited means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i).

    The Plaintiff has shown a genuine issue of material fact as to whether her physical

---

[5] The Equal Employment Opportunity Commission's interpretation of the statutory standard is not necessarily entitled to special deference by courts because Congress has not given the EEOC the authority to interpret the ADA. *Winsley v. Cook County*, 563 F.3d 598, 603 n.2 (7th Cir. 2009). However, Congress amended the ADA in 2008, and it now provides that major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A) (effective Jan. 1, 2009).

9

impairment substantially limits one or more of her major life activities.[6] She has come forward with evidence showing that the amputation of portions of two fingers on her right hand caused permanent, partial impairment with a total right hand impairment of 32%, a total upper extremity impairment of 29%, and a total whole person impairment of 17%. In her Affidavit, she states that her amputation (coupled with her arthritis) limits her ability to write, dress herself, bathe, cook, and work and interferes with all activities that require use of her right hand and arm, use of both arms, and an ability to close her right hand into a fist. In her deposition, she testified that she cannot close her right hand or hold things.

As to the issue of being a qualified individual, the Plaintiff contends that she is qualified for the metalwares operator job. A relevant regulation provides that the term qualified individual with a disability means "an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position [she] holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(l). The Plaintiff has shown a genuine issue of material fact as to whether she was able to perform the essential functions of the metalwares operator job with reasonable accommodation. The Plaintiff has shown that she worked as a metalwares operator for nearly twelve years, that she had trained herself to set up the manual staker machine process so that she could operate it with her hand, that the manual staker machine gave her no problems, and that she could also operate the serrator machine.

---

[6] Because the parties in addressing whether the Plaintiff was disabled focus on the first method of establishing disability (i.e., showing that a physical or mental impairment substantially limits one or more major life activities) and because the Plaintiff has shown a genuine issue of material fact on this issue, the Court need not address the "record of impairment" and the "regarded as" methods of determining whether the Plaintiff is disabled.

2. *Whether the Defendant Was Aware of Her Disability*

The Plaintiff has come forward with evidence showing that the Defendant was aware of her disability. In her Affidavit, the Plaintiff states that the Defendant had accommodated her physical impairment from the time of her injury up to November 2007, when the Defendant placed her on involuntary medical leave. The Affidavit of Judy Harlan demonstrates the Defendant's awareness of the Plaintiff's physical impairment. It states that Ms. Harlan was the Plaintiff's "supervisor when she was under medical restrictions[,] as well as when she was placed on medical leave" (Harlan Aff. ¶ 3, DE 20-3), and that the Defendant "has a history of honoring and accommodating work restrictions for its hourly employees at the plant where [the Plaintiff] worked, including [the Plaintiff] herself" (Harlan Aff. ¶ 4, DE 20-3). Ms. Harlan has also attested that the Plaintiff "presented a permanent restriction dated May 10, 2005 indicating that she could not work more than eight (8) hours per day, no foot pedals, alternate sitting/standing" and that the Defendant "accommodated [the Plaintiff] as to those restrictions." (Harlan Aff. ¶ 5, DE 20-3.)

3. *Whether the Defendant Failed to Reasonably Accommodate the Plaintiff's Disability*

The Plaintiff has come forward with evidence showing that she requested but the Defendant failed to provide a reasonable accommodation of her disability. The Plaintiff has shown that she returned to work on November 26, 2007, with a letter from her physician referencing her amputated fingers and her arthritis, spelling out physical restrictions, and suggesting that she work on the manual staker machine rather than the bender machine. Also before the Court is evidence that the Plaintiff could operate the manual staker machine and the

11

serrator machine, that the Plaintiff informed the Defendant of her ability to operate both machines but expressed her preference for the manual staker machine, and that the Defendant did not make assignments to machines based on seniority. The Defendant contends that it made assignments to the machines based on seniority. However, the CBA is not before the Court, and this is a factual dispute that the Court cannot resolve at this stage of the litigation.

For these reasons, the Court will deny the Defendant's Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Strike a Portion of the Affidavit of Bernadette Jankovich [DE 29] is DENIED, and the Defendant's Motion for Summary Judgment [DE 19] is DENIED.

SO ORDERED on May 6, 2010.

                                                s/ Theresa L. Springmann
                                                THERESA L. SPRINGMANN
                                                UNITED STATES DISTRICT COURT